UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

ANTHONY DAVID RUSSELL,           )
                                 )
        Plaintiff,                )
                                 )
v.                               )        No. 2:23-CV-68-DCP
                                 )
COMMISSIONER OF SOCIAL SECURITY, )
                                 )
        Defendant.                )

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 12]. Now before the Court is Plaintiff's Motion for Summary Judgment [Doc. 13]. Anthony Russell ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of Defendant Commissioner of Social Security ("Commissioner"). For the reasons that follow, the Court will **DENY** Plaintiff's Motion for Summary Judgment [**Doc. 13**] and will **AFFIRM** the Commissioner's decision.

I.    PROCEDURAL HISTORY

On March 25, 2020,[1] Plaintiff filed an application for Supplemental Security Income pursuant to Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, claiming a period of disability that began on January 2, 2011 [Tr. 217].[2] The Commissioner denied Plaintiff's

---

[1]    The Disability Determination and Transmittal document [Tr. 101] as well as both parties' briefs [*see* Docs. 14 & 23], and the ALJ's decision [Tr. 19] indicate that Plaintiff filed his application on March 25, 2020. It is noted, however, that the Application Summary states he applied on March 26, 2020 [*Id.* at 217].

[2]    Plaintiff previously applied for and was granted disability benefits in 2014 [Tr. 27]. Accordingly, the ALJ evaluated Plaintiff's application under *Drummond v. Commissioner of*

application initially [*id.* at 113–15] and upon reconsideration [*id.* at 125–27]. Plaintiff then requested a hearing before an ALJ [*Id.* at 131–33]. A telephonic administrative hearing was held on September 22, 2022 [*Id.* at 34–51]. On October 3, 2022, the ALJ found that Plaintiff was not disabled [*Id.* at 16–33]. The Appeals Council denied Plaintiff's request for review on April 24, 2023 [*Id.* at 5], making the ALJ's decision the final decision of the Commissioner.

Having exhausted his administrative remedies, Plaintiff filed a Complaint with this Court on June 20, 2023 [Doc. 1]. The parties have filed opposing briefs, and this matter is ripe for adjudication [Docs. 13, 14, 23].

## II. DISABILITY ELIGIBILITY AND ALJ FINDINGS

### A. Disability Eligibility

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual will only be considered disabled:

> [I]f his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

---

*Social Security*, 126 F.3d 837 (6th Cir. 1997) [*See id.*]. The ALJ did not adopt the prior ALJ's findings because a significant amount of time had passed since the previous application [*Id.*].

2

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in [the claimant's] case record." 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e), 416.920(a)(4), 416.920(e). RFC is the most a claimant can do despite his limitations. *Id.* §§ 404.1545(a)(1), 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

**B.    ALJ Findings**

Here, the ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity since March 25, 2020, the application date (20 CFR 416.971 *et seq.*).

3

2. The claimant has the following severe impairments: osteoarthritis, gout, status post hernia repair, and bipolar disorder. (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except mentally, the claimant can understand and remember simple instructions; maintain concentration for simple tasks; adapt to infrequent change; and have no interaction with the public and no more than occasional interaction with coworkers and supervisors.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on November 30, 1969, and was 50 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed (20 CFR 416.963).

7. The claimant has a limited education (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

10. The claimant has not been under a disability, as defined in the Social Security Act, since March 25, 2020, the date the application was filed (20 CFR 416.920(g)).

[Tr. 21–28].

### III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the

procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). In reviewing the Commissioner's decision, the Court must consider the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Hum. Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Additionally, the Supreme Court has explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (citation omitted). Rather, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* at 103 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In determining whether an ALJ's findings are supported by substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir.

5

1984) (citation omitted).

In addition to considering whether the ALJ's decision is supported by substantial evidence, the Court must review whether the ALJ employed the correct legal criteria. It is grounds for reversal of a decision—even if supported by substantial evidence—where "the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Hum. Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted). Furthermore, the Court is not under any obligation to scour the record for errors not identified by the claimant and arguments not raised and supported in more than a perfunctory manner may be deemed waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (noting that conclusory claims of error without further argument or authority may be considered waived).

## IV. ANALYSIS

Plaintiff raises two issues on appeal: the ALJ did not properly (1) consider the opinion evidence [Doc. 14 pp. 9–13] nor (2) Plaintiff's symptoms [*Id.* at 13–16]. The Commissioner responds that the ALJ properly considered (1) the opinion evidence for consistency and supportability [Doc. 23 pp. 3–11]; and (2) found Plaintiff's complaints were not consistent with the record [*Id.* at 11–12]. For the reasons more fully explained below, the Court finds that the ALJ properly considered the consistency and supportability of the opinion evidence and appropriately weighed Plaintiff's subjective complaints against the objective evidence in the record according to the regulations.

A. **Medical Evidence**

Plaintiff argues that the ALJ did not analyze the medical opinions for consistency and supportability and failed to explain why his RFC contradicted with the opined limitations in the medical opinions [Doc. 14 pp. 9–13]. The Commissioner responds that the ALJ properly analyzed all medical opinions for consistency and supportability and was not required to adopt opined limitations [Doc. 23 pp. 3–11].

The ALJ must "evaluate the persuasiveness of [the] medical opinions and prior administrative medical findings" using five factors, including the (1) supportability and (2) consistency of the opinions or findings, the medical source's (3) relationship with the claimant and (4) specialization, as well as (5) "other factors" such as the "medical source's familiarity with the other evidence in a claim" and their "understanding of [the SSA's] disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(a), (c). Of these five factors, "[t]he most important . . . are supportability and consistency." *Id.* § 404.1520c(a), (b)(2). The supportability factor means "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." *Id.* § 404.1520c(c)(1). Consistency is defined as "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.* § 404.1520c(c)(2).

Plaintiff asserts that the ALJ did not properly consider the opinion evidence of two examining sources, Dr. Robert Blaine ("Dr. Blaine") and Dr. Jeffrey Uzzle ("Dr. Uzzle"), and four reviewing opinions–Dr. Rebecca Hansmann ("Dr. Hansmann"), Dr. Norma Calway-Fagen ("Dr. Calway-Fagen"), Dr. Frank Pennington ("Dr. Pennington"), and Dr. Ok Yung Chung ("Dr.

7

Chung"). The Court will first address the examining sources and then turn to the reviewing opinions.

### 1. Dr. Robert Blaine

Dr. Blaine is a consultative examiner and examined Plaintiff on December 11, 2020 [Tr. 585]. Dr. Blaine found Plaintiff did not use an assistive device and was able to get up from his chair and onto the exam table without difficulty [*Id.* at 586]. Based on his examination, Dr. Blaine diagnosed Plaintiff with gout, right inguinal hernia (repaired), tachycardia, bilateral knee and ankle pain secondary to arthritis, migraines, decreased vision and hearing, and mumbling speech [*Id.* at 587]. Dr. Blaine opined the following work-related limitations: "stand[ing] or walk[ing] for three hours in an eight-hour workday with reasonable rest breaks limited by ankle and knee pain . . . lift[ing] and carry[ing] 5 lbs frequently and 20 lbs infrequently . . . [and] sit[ting] for eight hours with reasonable breaks" [*Id.*].

In finding Dr. Blaine's opinion unpersuasive, the ALJ followed the regulations. The ALJ explained that Dr. Blaine's opinion was unsupported by his examination findings [*Id.* at 26]. In particular, the ALJ noted that Dr. Blaine's examination notes indicated Plaintiff had "normal gait, intact strength, normal station, no use of assistive device, and largely intact ranges of motion" [*Id.*]. The ALJ also found Dr. Blaine's opinion was not consistent with the medical record in the relevant period generally finding Plaintiff to have normal strength and gait and not with pain or physical complaints [*Id.*]. Therefore, the ALJ properly analyzed Dr. Blaine's opinion for supportability and consistency. The regulations do not require anything more. *See* 20 C.F.R. § 404.1520c(a), (b)(2).

### 2. Dr. Jeffrey Uzzle

Dr. Uzzle is also a consultative examiner and examined Plaintiff on March 21, 2022 [Tr.

644]. He found Plaintiff can lift and carry up to fifty pounds occasionally, twenty pounds frequently, and ten pounds continuously [*id.*]; he can sit for two hours at a time for up to eight hours a day, stand for one hour at a time for up to six hours a day, and walk for one hour at a time for up to six hours in a day without the use of a cane [*id.* at 645]. Dr. Uzzle also concluded that Plaintiff had no limitation using his hands and feet and can frequently perform all postural activities except that Plaintiff can never climb ladders or scaffolds [*Id.* at 646].

The ALJ found Dr. Uzzle's opinion unpersuasive [*Id.* at 26]. He explained that Dr. Uzzle's opined limitations were not supported by his examination findings, which indicated normal joint survey, full ranges of motion, intact strength, and clear lungs [*Id.*]. Additionally, the ALJ noted that Dr. Uzzle had commented on Plaintiff's lack of effort and cooperation during the examination which limited his evaluation significantly [*Id.*]. The ALJ also found Dr. Uzzle's opinion inconsistent with the record, which showed Plaintiff's benign presentations throughout the relevant period [*Id.* (citing Exhs. C7F, C11F, C12F)]. Having analyzed Dr. Uzzle's opinion for supportability and consistency, the Court finds that the ALJ complied with the regulations. *See* 20 C.F.R. § 404.1520c(a), (b)(2).

Plaintiff asserts that Dr. Blaine and Dr. Uzzle were the "only examining source opinions addressing physical impairments and limitations and [argues these opinions] are more consistent with each other than with the ALJ's findings" [Doc. 14 p. 11]. He also notes, "Dr. Pennington agreed with Dr. Uzzle's overall opinion" and found Dr. Uzzle's opinion was consistent with and supported by objective evidence and the record, which was not considered by the ALJ in his analysis [*Id.*]. As an initial matter, while the regulations state that examining physicians' opinions *may* be weighed more than non-examining ones, "the regulations do not require the ALJ to give more weight to an examining source than a non-examining source[, instead, t]hey

9

merely illustrate what happens in the usual course." *Good v. Kijakazi*, No. 2:20-CV-157, 2022 WL 909012, at *4 (E.D. Tenn. Mar. 28, 2022). As discussed above, the ALJ followed the regulatory procedures in evaluating the opinions of Dr. Blaine and Dr. Uzzle, and he was within his role in finding their opinions unpersuasive. While the opinions of Dr. Blaine and Dr. Uzzle may have been somewhat consistent with each other, the ALJ explained why they were not consistent with other evidence in the record. It is within the sole discretion of the ALJ to determine the persuasiveness of medical opinions, and the ALJ found that Dr. Blaine's and Dr. Uzzle's opinions were not consistent with the record as a whole. *See* 20 C.F.R. § 404.1520c(a), (c).

### 3. Dr. Ok Yung Chung and Dr. Frank Pennington

Dr. Chung and Dr. Pennington are state agency examiners who reviewed Plaintiff's medical record for the relevant time period. Dr. Chung found Plaintiff is capable of lifting and/or carrying up to fifty pounds occasionally, twenty-five pounds frequently, standing and/or walking with normal breaks about six hours in an eight-hour workday, and sitting with normal breaks for a total of about six hours in an eight-hour workday [Tr. 85–86]. Additionally, he found Plaintiff is capable of frequent postural activities and did not have manipulative, visual, communicative, or environmental limitations [*Id.* at 86–87]. Similarly, Dr. Pennington opined the following work-related limitations: lift and/or carry fifty pounds occasionally and twenty-five pounds frequently, stand and/or walk with normal breaks for about six hours in an eight-hour workday, sit with normal breaks for six hours in an eight-hour workday, and frequently perform all postural activities [*Id.* at 107–08].

The ALJ found the physical limitations opined by Dr. Chung and Dr. Pennington, unpersuasive [*Id.* at 26]. While these doctors found Plaintiff was capable of medium exertion

work, the ALJ found Plaintiff was more limited based upon the medical record indicating Plaintiff's history of gout, osteoarthritis, and hernia [*Id.*]. In addition, the ALJ noted other evidence was submitted after the doctors reviewed Plaintiff's record that supported greater limitations [*Id.*]. Plaintiff argues that the ALJ failed to include or explain why he did not include Dr. Pennington's and Dr. Chung's opined limitation that Plaintiff could frequently climb, balance, stoop, kneel, crouch, and crawl [Doc. 14 pp. 12–13]. But given that the ALJ found their opinions to be unpersuasive, he was not required to provide further explanation for not adopting their opined limitations. *Cf. Cooper v. Comm'r of Soc. Sec.*, No. 2:18-cv-67, 2018 WL 6287996, at *5 (S.D. Ohio Dec. 3, 2018) ("[W]here, as here, the ALJ assigns significant weight to a particular opinion and states it is consistent with the record, he must incorporate the opined limitations or provide an explanation for declining to do so." (citation omitted)).

4. **Dr. Rebecca Hansmann and Dr. Norma Calway-Fagen**

Dr. Hansmann opined the following with regard to Plaintiff's mental functioning: no limitations in understanding or memory, moderate limitations in concentrating and persisting, social interactions, and adapting to changes in the work setting [Tr. 109–10]. Similarly, Dr. Calway-Fagen found that Plaintiff had moderate limitations in his ability to understand, remember, or apply information, interact with others, concentrate, persist, or maintain pace, and adapt or manage oneself [*Id.* at 81].[3] Plaintiff asserts that, while finding both of these opinions

---

[3] Dr. Calway-Fagen opined two separate mental RFC assessments for Plaintiff. When not considering substance addiction disorders (referred to as "Drug Addiction and Alcoholism" or "DAA" under SSR 13-2p), she found that Plaintiff was moderately limited in all the Paragraph B criteria [Tr. 81]. However, when considering DAA, she found Plaintiff had a marked impairment in his ability to concentrate, persist, or maintain pace and was moderately impaired as to all other Paragraph B criteria [*Id.* at 82–83]. The ALJ did not find DAA to be a severe impairment [*id.* at 21] and found the record supported a moderate limitation in concentrating, persisting, and maintaining pace [*id.* at 22].

11

persuasive, the ALJ failed to include limitations opined by Dr. Hansmann and Dr. Calway-Fagen with respect to concentration, persistence, and pace in the RFC [Doc. 14 pp. 11–13].

At step three, the ALJ concluded that Plaintiff had a moderate limitation with regard to concentrating, persisting, or maintaining pace [Tr. 22]; however, the paragraph B criteria used at steps two and three do not constitute an RFC assessment. *Taylor v. Colvin*, No. 1:14-CV-1710, 2016 WL 760399, at *13 (N.D. Ohio Feb. 26, 2016) (citation omitted). The ALJ is "not required to include a paragraph B finding as part of her RFC determination." *Bookmyer v. Comm'r of Soc. Sec.*, No. 1:22-cv-1004, 2023 WL 2643496, at *6 (W.D. Mich. Mar. 27, 2023). That is because "[t]he mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorder listings." SSR 96-8p, 1996 WL 374184, at *4 (June 2, 1996). Therefore, a finding by the ALJ that plaintiff has mild or moderate difficulties in concentration, persistence, or pace and in adapting or managing oneself, does not necessarily mean that plaintiff will have corresponding limitations with regard to his RFC. *See Pinkard v. Comm'r of Soc. Sec. Admin.*, No. 1:13-CV-1339, 2014 WL 3389206, at *10 (N.D. Ohio July 9, 2014) ("[T]the ALJ does not have to include paragraph B finding in his RFC finding. . . . Hence, the ALJ was correct in finding that Plaintiff had moderate limitations in evaluating his mental impairment under the listings at step three of the sequential evaluation process, and in not including a 'moderate limitation in concentration, persistence, and pace' in his residual functional capacity finding at steps four and five."). Instead, the pertinent question is whether the ALJ's RFC determination and accompanying hypothetical questions posed to the vocational expert "accurately portray a claimant's individual physical and mental impairments." *Reinartz v. Comm'r of Soc. Sec.*, 795 F. App'x 448, 449 (6th Cir. 2020) (citing *Ealy v. Comm'r*

12

*of Soc. Sec.*, 594 F.3d 504, 512–13 (6th Cir. 2010)); *See Bookmyer*, 2023 WL 2643496, at *6 ("The pertinent question, then, is whether the ALJ's RFC assessment properly accounted for Plaintiff's mental limitations."). "Courts . . . have also found, however, that an ALJ's failure to explain how a claimant's mild psychological limitations affect the RFC assessment may constitute reversible error where the ALJ makes no mention of the claimant's mental impairments in the RFC analysis." *Shamsud-Din v. Comm'r of Soc. Sec.*, No. 16-cv-11818, 2017 WL 3574694, at *6 (E.D. Mich. July 24, 2017) (internal citations omitted).

Here, in finding Dr. Hansmann's and Dr. Calway-Fagen's opinions persuasive, the ALJ explained that their opinions were "well supported by and consistent with the evidence of record" [Tr. 26]. The ALJ noted that, when compliant with his medication, Plaintiff typically presents with "coherent thought process, intact memory, calm behavior, and fair to good attention, concentration, insight, and judgment" [*Id.*]. Therefore, the ALJ determined that moderate mental health limitations were appropriate and accounted for these mental health limitations in his RFC by restricting Plaintiff to simple instructions and tasks, adapting to infrequent change, having no interaction with the public, and having no more than occasional interaction with co-workers and supervisors [*Id.* at 23, 26]. These limitations properly addressed Plaintiff's moderate mental health limitations and were supported by the record. *See Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625 (6th Cir. 2016) (holding that limiting a plaintiff to simple, routine tasks or unskilled work accounts for limitations in concentration, persistence, and pace); *Stewart v. Comm'r of Soc. Sec.*, 811 F. App'x 349, 355–56 (6th Cir. 2020) (affirming an RFC limitation to "simple, routine, repetitive tasks" when Plaintiff "had no more than moderate difficulties . . . in maintaining concentration, persistence, and pace").

Plaintiff argues that the ALJ failed to adopt Dr. Hansmann's opined limitation that

13

"[Plaintiff] will have interruptions that could affect concentration and ability to maintain persistence and pace on an intermittent basis" [Doc. 14 p. 11 (citing Tr. 110)]. However, to the extent that Dr. Hansmann believed Plaintiff would "have interruptions that could affect concentration and ability to maintain persistence and pace on an intermittent basis," she opined that Plaintiff would be moderately limited [Tr. 109–10]. The ALJ likewise found that Plaintiff has moderate limitations in concentrating, persisting, and maintaining pace [*id.* at 22] and provided accommodations for such in his RFC as explained above [*id.* at 23]. As the Commissioner correctly notes, this portion of Dr. Hansmann's assessment was not stated in terms of a functional limitation [Doc. 23 p. 8] as it was unspecified, but nevertheless, the Court finds that the ALJ did account for any possible moderate limitations in concentrating, persisting, and maintaining pace in the residual functional analysis. Therefore, the ALJ effectively adopted this portion of Dr. Hansmann's opinion, thereby negating Plaintiff's argument.

Accordingly, the ALJ properly considered all of the medical opinions on the record.

### B. Plaintiff's Subjective Complaints

Plaintiff argues that the ALJ improperly discounted Plaintiff's subjective complaints which were supported by and consistent with the record [Doc. 14 pp. 13–16]. The Commissioner responds that the ALJ properly found that Plaintiff's allegations were not consistent with the record, which demonstrated that Plaintiff had mainly normal physical findings and that his mental symptoms were controlled with medication [Doc. 23 pp. 11–12].

A plaintiff's complaints are just one of many forms of evidence considered by the ALJ. *See* SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25, 2017) ("Other evidence that we will consider includes statements from the individual, medical sources, and any other sources that might have information about the individual's symptoms[.]"). "An individual may make statements about

14

the intensity, persistence, and limiting effects of his or her symptoms" either directly to medical sources or to the Commissioner. *Id.* "When analyzing the claimant's subjective complaints of pain, the ALJ must also consider the following factors and how they relate to the medical and other evidence in the record: the claimant's daily activities; the location, duration, frequency and intensity of claimant's pain; the precipitating and aggravating factors; the type, dosage and effect of medication; and the other treatment or measures to relieve pain." *Sparks v. Astrue*, No. 2:11-CV-00074, 2013 WL 1497849, at *9 (M.D. Tenn. Apr. 11, 2013), *report and recommendation adopted sub nom. Sparks v. Colvin*, No. 2:11-CV-00074, 2013 WL 1910642 (M.D. Tenn. May 8, 2013) (citation omitted).

In this case, the ALJ found Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the] decision" [Tr. 24]. For example, the ALJ noted that Plaintiff described his symptoms as "hearing voices, feeling worthless, and difficulty being around others" [*Id.* at 23]. The ALJ found that these statements were not consistent with the record which indicates that, when Plaintiff was compliant with medication, he "denied feeling hopeless, suicidal, or having delusions, hallucinations, and paranoia" [*Id.* at 25]. Additionally, Plaintiff complained of physical limitations such as having difficulty lifting over twenty pounds, residual pain in his left forearm, wrist, hand, legs, and ankles, and limited capacity for standing and walking for long periods of time [*Id.* at 23]. However, the ALJ found that the record "showed normal gait, station, toe walking, heel walking, deep knee bend, and tandem walking" [*Id.* at 25]. While Plaintiff disagrees with which portion of the record the ALJ found persuasive, an ALJ's decision is "not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc.*

15

*Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). "This is so because there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *Id.* "The ALJ's decision in this case specifically addresses in great detail not only the medical evidence, but also Plaintiff's testimony and his subjective claims, clearly indicating that these factors were considered." *Sparks*, 2013 WL 1497849, at *10; *See also* Tr. 23–24. "The ALJ explained his reasons for discounting Plaintiff's credibility. . . Therefore, the ALJ's determination must stand." *Id.*

## V. CONCLUSION

Based on the foregoing, Plaintiff's Motion for Summary Judgement [**Doc. 13**] will be **DENIED**. The decision of the Commissioner will be **AFFIRMED**. The Clerk of Court will be **DIRECTED** to close this case. The Court will enter a separate Judgment.

**ORDER ACCORDINGLY.**

Debra C. Poplin
United States Magistrate Judge